### CHAMBERLAIN v. PETTIT.[1]

(District Court, E. D. Pennsylvania. January 15, 1892.)

**1. SHIPPING—CHARTER-PARTY.**
A charter of a vessel to carry a certain named cargo, drawn in formal terms and without conditions, will not be construed as a mere memorandum, not binding on the parties, where there is nothing to warrant a belief that the ship's representative understood that he was to be affected by the charterer's failure to get the cargo named in the charter.

**2. SAME—DAMAGES FOR BREACH.**
A member of a firm of ship-brokers having chartered a vessel to carry a certain kind of cargo, and being unable to furnish the cargo, his firm rechartered the vessel for a cargo of a different character, paying also to the ship a sum in addition to the freight named in the second charter. *Held*, as none of these circumstances show that the master agreed that the second charter should replace the first, he was entitled to recover damages if the vessel was delayed or the freight of the second cargo of less value than the first.

In Admiralty. Libel *in personam* by Joab Chamberlain, master and part owner of the schooner Vanderherschen, against Charles A. Pettit, Frank D. Pettit, and Robert F. Smith, trading as Charles A. Pettit &

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

Co., to recover damages for breach of contract to furnish a certain cargo for said schooner. Order for commissioner to assess damages, if same not mutually agreed on by parties.

*Alfred Driver* and *J. Warren Coulston*, for libelant, cites, as to what constitutes a charter-party, *The Tribune*, 3 Sum. 144.

*Henry R. Edmonds*, for respondent.

BUTLER, District Judge. In August, 1890, Charles A. Pettit chartered the schooner Vanderherschen to carry a cargo of lumber from Charleston to Philadelphia, on the terms stated in the written charter, then signed. Soon thereafter the charterer informed the libelant that he could not furnish the cargo, and would not need the vessel. He however, as a member of the firm of Charles A. Pettit & Co., ship-brokers, (on whose account, it would seem, the charter was taken,) procured a cargo of railroad ties from other parties. After the cargo was carried, and the freight on it collected, the libelant brought suit to recover damages,—which he says he sustained from the respondent's failure to comply with his contract.

The defense is twofold: *First*, that the charter was intended as a memorandum simply and that the parties were not to be bound by it; and *second*, that the cargo of ties carried under charter with others which the respondent's firm obtained for the vessel, was substituted for the lumber, which the respondent undertook to furnish, and the respondent relieved from all responsibility under his contract.

I do not find anything whatever to support the first proposition. There is no doubt that the respondent contemplated a transfer of the charter, or of his rights under it, to parties in Wilmington, (with whom he was in correspondence;) and it is probable the libelant was aware of this; but there is nothing to warrant a belief that the libelant understood that he was to be affected by any disappointment the respondent might be subjected to in his dealings with these parties. The charter was formal in all its terms and without conditions. If it was not intended to bind the parties absolutely, it would not have been so drawn. A few lines would have expressed the conditional understanding which the respondent says the parties had arrived at; and if no more had been intended it is reasonable to suppose an informal memorandum would have been made, expressing this, and nothing else.

Nor do I find anything to support the second proposition, except in the testimony of Robert F. Smith, who was a member of the firm of Charles A. Pettit & Co. If his statement that the charter (in suit) was destroyed in his presence and with the assent of the libelant, was uncontradicted, or so corroborated that it could be accepted as true, it would sustain this branch of the defense. It seems reasonably certain, however, that the witness is mistaken. The respondent himself testifies that he, personally, destroyed the charter, (believing it to be of no further value;) he does not recollect the libelant being present, and does not suggest or pretend that he assented, or was aware of the intention to destroy it. It is plain from his testimony that he did not ask the libelant's assent; and that the libelant was unaware of his act, until told of it subsequently.

The libelant contradicts Mr. Smith flatly, by saying that he knew nothing of the destruction of the paper until told of it, when he desired to see it or have a copy. It seems plain that Mr. Smith is mistaken. There is nothing else, as before stated, which tends to support this branch of the defense. The respondent may have supposed at the time, that the second charter was to take the place of the first, as his testimony indicates, but there is nothing which tends to show that the libelant agreed that it should, or that he did not expect to hold the respondent to his contract. The circumstance that Pettit & Co. paid a small sum in addition to the amount which the second charter named as freight, to induce the libelant to take this cargo, does not seem to have any bearing on the question. The respondent was interested in procuring a cargo for the vessel and had an inducement to make the sacrifice involved in this payment,—independently of a settlement with the libelant. The carriage of this cargo necessarily reduced the damages which might result from his failure to comply with his contract; and besides, the procurement of this charter entitled his firm to commissions several times greater than the sum paid.

I will not consider the question of damages. It is possible none were sustained. If the second charter was as valuable as the first, so that the libelant made as much under it as he would have made under the first, and suffered no detention, he cannot complain. I will submit this question to a commissioner, (if the parties do not agree respecting it,) and will base the decree on his report, after it has been approved.